# Exhibit G

**IN THE CIRCUIT COURT FOR MONROE COUNTY**
**TENNESSEE**

| | |
|---|---|
| MONROE LIFE BALLOON FIESTA; | ) |
| | ) |
| THE BINGHAM GROUP, INC; | ) |
| | ) |
| AND | ) |
| | ) |
| LISA BINGHAM individually, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CASA MONROE INC, | ) |
| STEVE DAVIS, | ) |
| ALISA HOBBS, | ) |
| DUANE BAUMERT, | ) |
| TYLER WEISS, | ) |
| JOE ANDERSON | ) |
| TSALI NOTCH VINEYARD. LLC | ) |
| | ) |
| | ) |
|     Defendants | ) |

TIME _____ AM/PM

**FILED**

SEP 0 5 2019

MARTHA M. COOK
CIRCUIT COURT CLERK

No: V 1901795
Jury Trial Requested

## COMPLAINT

### I. Parties. Jurisdiction and Venue

1. Jurisdiction and venue are proper in that this is an action alleging civil tort violations
   and all the relevant events occurred in Monroe County, Tennessee.

2. Plaintiff, The Monroe Life Balloon Fiesta is registered with the Federal Government
   as a non-profit organization for fundraising events to benefit non-profit organizations
   such as CASA Monroe Inc. of Monroe County, Tennessee.

1

3. Plaintiff, The Bingham Group Inc. is a Tennessee corporation structured to advertise and promote businesses in Monroe County Tennessee and elsewhere through various publications including the Monroe Life Magazine.

4. Plaintiff, Lisa Bingham is a resident of Tennessee and a principal in the Bingham Group.

5. The Plaintiffs bring this action for defamation, procurement of breach of contracts, intentional interference with business relationships, and civil conspiracy to commit all three.

6. CASA Monroe Inc. (Court Appointed Special Advocates) is a public benefit corporation doing business in Monroe County, TN and may be served through its principal officer, Alisa Hobbs.

7. Defendant, Tsali Notch is a Tennessee Limited Liability Corporation doing business in Monroe County and may be served through its registered agent for service of process, Cary L. Cox, 140 Harrison Rd. Madisonville, TN 37354. All acts of Tsali Notch were conducted through its authorized agents, either its owner, Cary Cox or its general manager, Jeremy Dalton acting within the scope of their agency for Tsali Notch.

8. Defendant, Duane Baumert is a citizen of Monroe County and member of the Board of CASA Monroe, however at the time of this action he was the Chairmen of CASA Monroe Inc.

9. Defendant, Joe Anderson is the current Chairmen of CASA Monroe Inc, but was a member of the CASA Monroe Board of Directors at the time of this action.

2

10. Defendant, Tyler Weiss is a Monroe CASA Monroe board member.

11. Defendant, Alisa Hobbs is the Executive Director of Monroe CASA Monroe.

12. Defendant, Steve Davis is a hot air balloon pilot who acted as a leader and representative of a group of hot air balloon pilots.

## II. Facts of Complaint

13. For several years Plaintiff, Lisa Bingham was involved in fundraising projects for organizations supporting children in the Tennessee communities and the Monroe County community, including Hiwassee College and CASA Monroe Inc.

14. Through experience and training, Lisa Bingham developed the ability to organize and execute large fundraising events to benefit the foster children of Monroe County.

15. In 2013, Lisa Bingham organized and executed the Monroe Life Magazine's 1st Annual Celebration of HOPE Balloon Glow Festival, involving hot air balloons to raise funds and support the special youth of Hiwassee College.

16. The hot air balloon events organized by Lisa Bingham were coordinated and supported by the Bingham Group and its staff who had contact with many advertisers and donors.

17. Lisa Bingham, the Bingham Group and its staff did all these fundraising events on a voluntary non-profit basis and did not receive, nor require payment for their voluntary service.

18. During the time of the events that caused this action, Lisa Bingham was on several boards, including the board of Hiwassee College and CASA Monroe Inc.

3

19. Through the Bingham Group's ability to advertise and promote businesses, Lisa Bingham was able to use her company to support Hiwassee College and through her efforts, the State of Tennessee became aware of the special needs of certain students at Hiwassee College and other state colleges and the financial need Lisa Bingham and her volunteers provided in those years diminished.

20. In 2015 Lisa Bingham and the Bingham Group redirected their balloon fundraising abilities and efforts from supporting Hiwassee College to supporting CASA Monroe Inc.

21. In 2015, Lisa Bingham told the board members of CASA Monroe that she and her corporation The Bingham Group, and other members of the Bingham Group were going to conduct a hot air balloon fundraising event to raise money for the public benefit organization known as CASA Monroe Inc., aka CASA Monroe.

22. Lisa Bingham was well respected in the community, by the Boards of both Hiwassee College and CASA Monroe, and was trusted to conduct a top-notch fundraiser for the benefit of the children in Monroe County.

23. Starting in 2015, with the blessings of CASA Monroe and its Board, Lisa Bingham and the Bingham Group organized a hot air balloon fundraising event to benefit CASA Monroe and its service to children in Monroe County. These were known as the Monroe Life Balloon Fiesta.

24. No contracts or other legally binding agreements existed or were contemplated between the Plaintiffs and any of the Defendants, and Lisa Bingham and the Bingham

4

Group were free to organize the fundraisers in any manner they saw fit, if all the proceeds went to CASA Monroe.

25. The hot air balloon events were envisioned to be a wholesome family event where families and children could come and sit on the open fields of mowed grass and watch many hot air balloons inflate and give tethered rides to the large crowds. At night the balloons would glow from the propane fires within and would flicker on and off to choreographed music. There were many food and craft vendors and live music as well.

26. Lisa Bingham and the Bingham Group began the fundraising events for CASA Monroe by using the Tsali Notch Winery venue, located in Monroe County.

27. The fundraising event had no legal ties to CASA Monroe and was always independently organized and coordinated by Lisa Bingham and the Bingham Group, but Lisa Bingham and the Bingham Group always donated the net proceeds of the event to CASA Monroe.

28. Proceeds from the hot air events were deposited into CASA Monroe's general account for the orderly payment of costs and what remained was donated to CASA Monroe.

29. At one time, The Monroe Life Balloon Fiesta was voted as the 2nd best annual event in Monroe County, TN by The Reader's Choice Awards. An award voted on by Monroe County residents.

30. The Balloon Fiesta has been a highly successful fundraising event with much anticipation each year and generally went without much controversy.

5

31. However, gradually the Tsali Notch Winery and its owner, Cary Cox interjected more wine promotion influence into the balloon festival event. Wine samples and free wine tasting began to take place with the approval of the CASA Monroe board members.

32. During the 2017 event at Tsali Notch, Lisa Bingham and her volunteers noticed several questionable issues not supported or encouraged by Lisa Bingham or the Bingham Group, such as the money being whisked away without proper accounting and the Winery selling large amounts of alcohol.

33. The VIP tent served free, unlimited beer and wine during the two-day event with no control on the amount of consumption. One vendor became so concerned about the alcohol consumption at the event she refused to allow her teenage children out of her tent.

34. The director of CASA Monroe and agents of Tsali Notch set up wine tents in the center of the fiesta event. There were many complaints from the parents of children that they had to walk through the winery areas to get anywhere. In addition, three of the wine sampling tents were directly adjacent to the kid's play zone, the lines would get very long and often parents became uncomfortable with the behavior of drinkers and removed their children from the kid zone lines.

35. Beginning in 2017, Tsali Notch winery principals and CASA Monroe board members decided to invite Nine Lake winery and other wine producing companies to participate in wine sales, by the glass at the event. The Board Chairman of CASA

6

Monroe, Duane Baumert arranged for 10 kegs of beer to be available for sale at the event.

36. Complaints were received from multiple families attending the event that people were walking around the area drunk.

37. Additionally, during the 2017 event, one or more board members of CASA Monroe and Gary Thomas, a friend of Duane Baumert who has no affiliation with CASA Monroe or Plaintiffs, proceeded to collect the cash proceeds from the two day event including gate and concessions proceeds, and the money was taken away by Defendant Duane Baumert as well as Gary Thomas, without an accounting of the proceeds to Lisa Bingham or any other member of the Bingham Group.

38. Lisa Bingham asked Duane Baumert for an accounting of the proceeds, but no adequate accounting was ever provided to the Plaintiffs. This inability to reconcile proceeds and expenditures raised a red flag and signaled a need to change the location and the collection of proceeds procedure.

39. It was reported that the event met and exceeded the expectations of the organizers, although the organizers were never given a proper accounting.

40. Upon information and belief, no proceeds from the sale of alcohol were donated to CASA Monroe during the 2017 Monroe Life Balloon event.

41. After the event, it was learned that some of the costs of the event had not been paid in full.

42. Around February of 2018, Lisa Bingham began to plan another hot air balloon fundraiser to benefit CASA Monroe.

7

43. Several issues arose with the Tsai Notch venue besides the alcohol problem including excessive demands for rental of the venue and costs associated with preparation, also including no permission to allow Lisa Bingham to mitigate the expenses by competitive bids.

44. Lisa Bingham was told by Duane Baumert she was not welcome in the planning meetings involving the winery for her own fundraising event.

45. The agents of Tsali Notch began making demands for additional money such as a percentage of the ticket sales plus $8,000.00 and exorbitant fees for site preparation. A barn that was once used for the vendors and craftsmen was now going to be used to house more wine tasting and beer sales.

46. Getting the impression that the venue owners and certain members of the board of CASA Monroe, and Cary Cox, were not putting the best interests of the children who benefit from CASA Monroe first and foremost, and, knowing that a more efficient and profitable fundraiser could be conducted elsewhere, Lisa Bingham began making contacts and inquiries for an alternate location for the 2018 hot air balloon fundraiser.

47. On, or about March 2018, certain members of the CASA Monroe Board of Directors, realizing Lisa Bingham was developing plans to hold the next hot air balloon fundraiser at another location, had a Board Meeting and voted to have the next fundraiser at Tsali Notch.

48. Lisa Bingham advised the Board not to vote on such a motion, but the Board conducted the vote in Lisa Bingham's absence, even though she was a board member

8

and even though the Board did not have authority to tell Lisa Bingham when or where she and her company could conduct her volunteer fundraisers.

49. Lisa Bingham was under no obligation, legal or otherwise, to follow or adhere to a Board meeting directive telling her where to have the Plaintiffs' fundraiser, which merely benefited CASA Monroe.

50. To avoid accounting issues like the 2017 fundraiser, Lisa Bingham applied to the Federal Internal Revenue Service for a 501-c tax exempt status and opened a bank account in the name of Monroe Life Balloon Fiesta to insure an orderly process of financial accountability for the event. This 501-c application was successful and Monroe Life Balloon Fiesta is a legal non-profit organization.

51. Upon information and belief, the Defendants became angry that the proceeds from the next event were not going to be placed in CASA Monroe's complete control until a proper accounting was conducted and after all expenses were met.

52. Lisa Bingham was very concerned about the growing alcohol abuse problem at the balloon festival and this concern and better management of the funds greatly enraged Defendants, especially CASA Monroe's Chairmen, Duane Baumert.

53. Throughout the spring months of 2018, Lisa Bingham, the Bingham Group and its volunteer staff made many preparations for the next event including locating a suitable venue.

54. For the 2018 Monroe Life Balloon Fiesta, Lisa Bingham negotiated the event at the Sequoyah Birthplace Museum site in Monroe County, Tennessee for September 1 and

9

2, 2018. The property is owned by The Eastern Band of the Cherokee Indians. No alcohol can be sold on the Sequoyah land.

55. The Plaintiff, Monroe Life Balloon Fiesta sent Balloon Pilot Registration Agreements to various hot air balloon pilots announcing the Sequoyah Birthplace Museum venue, and 22 pilots agreed to participate in the balloon festival and responded providing proof of current pilot licenses and proof of liability insurance required for the event.

56. After filling out the Pilot Registration Agreements, the pilots were told "All pilots are expected to participate in the balloon glow each evening."

57. At a CASA Board of Directors meeting on May 17, 2018 with all Defendant CASA Board Members present, Lisa Bingham informed the Board that at that time twenty (20) pilots had contracted with Plaintiffs to participate in the 2018 Monroe Life Balloon Fiesta at Sequoyah Birthplace Museum and four (4) more pilots were tentative.

58. Based on the pilot response and contract to participate in the balloon festival, the Bingham Group prepared and distributed thousands of advertisements for the event, both in Monroe Life Magazines and standalone posters extolling 22 hot air balloons. Television and radio spots were arraigned, 20,000 flyers were sent to local East Tennessee schools and posters and social media were employed to advertise the event. In addition, billboards, and yard signs and rack cards at the welcome centers were distributed and adds in the Bingham Group McMinn Life and Farragut Life Magazines were placed.

10

59. The Defendants and pilots were well aware of the venue but never gave any indication that they would not honor the contract to participate and, in fact, on Monday, August 27th, a few days before the event, Defendants Steve Davis, Alisa Hobbs, Duane Baumert, and the Fire Chief of Monroe County and volunteers from the Bingham group were at the Sequoyah Birthplace Museum venue discussing placement of the propane truck, the tethers for the balloons and other details to finalize the procedures for the festival that weekend.

60. The Plaintiffs secured mountain cabin lodging for the balloon pilots and as part of the contract between Plaintiff, Monroe Life Balloon Fiesta and the pilots, the pilots' cabins were paid for by the event.

61. The Plaintiffs guaranteed the pilots five (5) provided meals for them and their families throughout the weekend.

62. On the day before the 2018 event, August 31, 2018, after days of intense preparation by the Bingham Group, Tyler Weiss, Duane and Dot Baumert, Anny and Steve Davis, Joe Anderson, Alisa Hobbs, Melisa Hooper and a banker named Logan Young appeared at the museum site obviously hostile, screaming at, and making written demands on Lisa Bingham.(Logan Young is excluded from being hostile) These Defendants accused Lisa Bingham of misappropriating or stealing event funds in front of pilots and their families, event volunteers, and Bingham Group employees.

63. Some Defendants stated in front of pilots, event volunteers, and Bingham Group employees that Monroe Life Balloon Fiesta's non-profit status was false and illegal.

11

64. These statements were made even though Defendant's were shown proof that Monroe Life Balloon Fiesta could legally operate as a non-profit.

65. The same hostile group was obviously trying to find reasons why Lisa Bingham and the Bingham Group could not conduct the fundraiser however, every contrived objection was resolved by the Plaintiffs. Finally, the group insisted Lisa Bingham sign a paper saying the funds from the 2018 event were going to CASA Monroe, as well as the previous year's events.

66. On Saturday, the day of the event, Tyler Weiss again appeared and continued the verbal attack from the previous day and, the confrontation became so intense the Chief of Police had to step in and tell Tyler Weiss to stop his verbal assault on Lisa Bingham and the Bingham Group's employees.

67. During the August 31st confrontation, a witness, Pastor Lon Shoopman, who was invited to give an opening invocation and pray for the safe flights of the pilots, walked up to the Plaintiffs while the group of hostile Defendants were making threats and demands on Lisa Bingham and after hearing the Defendants, and reading the documents the Defendants were insisting the Plaintiff sign, stated to Plaintiff Lisa Bingham, "Lisa, they are accusing you of stealing money."

68. At about 6:00P.M. the pilots were herded into a large group in the museum parking lot and addressed by Defendant Steve Davis and others who were telling the pilots to leave the Sequoyah Birthplace Museum venue and go to the Tsali Notch location where they would find food and liquid refreshments.

12

69. Once the pilots and their families arrived at Tsali Notch, they were provided free food and free alcohol and a large party atmosphere ensued all weekend. Pilots cannot fly if they have been drinking.

70. Upon information and belief, Defendant Tsali Notch, through its authorized agent, Jeremy Dalton, already made accommodations for pilots, CASA Monroe Board Members, and families to be there for the weekend.

71. Tsali Notch was aware of the date, time and location of the 2018 Monroe Life Balloon Fiesta through its various advertisements in Monroe County, TN.

72. Further, upon information and belief, Defendant Tsali Notch was aware of the date, time, and location of the event through its agent, Jeremy Dalton's communications with Defendant CASA Monroe Board Members.

73. Upon information and belief, Jeremy Dalton communicated with CASA Board Members prior to the 2018 Monroe Life Balloon Fiesta to set up a plan to make sure Tsali Notch could accommodate the pilots, their families, as well as the CASA Monroe Board Members for the weekend.

74. Upon information and belief, Jeremy Dalton as the representative of Tsali Notch, assisted in setup at Tsali Notch each day during the 2018 Monroe Life Balloon Fiesta to make sure wine, food, and other drinks were available for the pilots and their families as well as CASA Monroe Board Members.

75. On September 1, 2018, Defendants Steve Davis, Duane Baumert, and Tyler Weiss all stated to Cece Owens (Digital Marketing Executive for Plaintiff, The Bingham Group) that her boss, Lisa Bingham, was a liar and a thief. That she was stealing

13

event funds that were supposed to go to CASA Monroe. These statements were made on Tsali Notch Property in front of pilots and their families, as well as Tsali Notch employees, owners, and managers.

76. Ms. Owens was further met by four pilots who were present at Tsali Notch and they each informed her that Plaintiff Lisa Bingham was stealing money from CASA Monroe.

77. During that same evening, Defendant Steve Davis went on a stage at Tsali Notch and informed the pilots that he was not going back to Sequoyah Birthplace Museum because he was fired and was staying at Tsali Notch for the weekend. He further stated that the other pilots could not go back to Sequoyah and fly because their insurance would not cover them without a "balloon meister" to lead the flight.

78. This is an untrue statement and Defendant's true motive was to keep the pilots away from the 2018 Monroe Life Balloon Fiesta.

79. Defendant Steve Davis took the stage and made this announcement on Defendant Tsali Notch's property, and in front of Tsali Notch employees, owners, and managers.

80. Plaintiffs had organized five (5) donated dinners and breakfasts for the pilots at Sequoyah Birthplace Museum each morning and night that weekend.

81. However, a few of those donated meals were redirected by the Defendants to Tsali Notch, who set up and made space available to accommodate the meals for the pilots each day.

82. Plaintiffs contracted with Blossman Gas and Propane to provide the pilots with propane to use during the Fiesta.

14

83. However, the propane ordered for the pilots to by the 2018 Monroe Life Balloon Fiesta was redirected to Tsali Notch and used there that weekend.

84. Defendant Duane Baumert called the propane company and redirected them to Tsali Notch instead of Sequoyah.

85. Defendants did not pay for the propane they used at Tsali Notch that weekend but instead have left the bill for the Plaintiffs, who never received the propane at Sequoyah Birthplace Museum for the Fiesta.

86. The pilots stayed at lodgings provided by the Plaintiffs but met daily at Tsali Notch and flew out of Tsali Notch many times.

87. Tsali Notch, through its authorized agents, conspired with the other defendants to keep the pilots away from the festival site by providing a place for the pilots to drink, party and fly their balloons, thus inducing and persuading them to not provide their balloon rides to the thousands of people who were waiting at the Sequoyah Birthplace Museum festival venue.

88. Tsali Notch, by its agents, acting within the scope of their employment, and the Defendant CASA Monroe board members conspired against Lisa Bingham and The Bingham Group because they were deprived of using the event to sell wine and beer at the Tsali Notch Winery.

89. On Saturday, Steve Davis, the balloon meister, told one or more people that he personally spoke to the Chief of Police and was advised that if he, or certain members of the CASA Monroe board returned to the museum venue they would be arrested. This statement to the people was untrue.

15

90. At about 3:50 P.M. September 1, Steve Davis sent an email to Lisa Bingham and others saying the balloon flights would be cancelled for the day due to weather.

91. However, upon information and belief many pilots flew both Saturday and Sunday at Tsali Notch, less than 15 miles away.

92. Two pilots came back to Sequoyah Saturday night and had no problem tethering for the crowds of families who were expecting to see 22 balloons tethering and doing a "glow show" of 22 balloons.

93. One pilot advised he did not return because he had drank beer provided to him by the Defendant, Tsali Notch Vineyard.

94. On Sunday night, only one balloon came to the Sequoyah Museum site to the great disappointment of all the families who came to see the balloons. Obviously, the crowds were very disappointed and many demanded ticket refunds.

95. Approximately five (5) days after the event each balloon pilot was sent the following email:

As you are aware, the Monroe Life Balloon Festival of Labor Day Weekend did not have 22 balloons as scheduled and no balloon glow was presented. I am trying to determine why you did not come on Saturday or Sunday. This is your opportunity to explain your actions or inactions. Please give an honest and complete answer to why you went to Tsali Notch Vineyard, not Sequoyah Birthplace Museum on the evening of August 31, 2018 and continued to report to Tsali Notch Vineyard on September 1st & 2nd, 2018. One or more pilots expressed an "uncomfortable" feeling about coming to the event where thousands of children and their families were waiting. What was said or done that caused the uncomfortable feeling?

If you decide not to answer this request, or give answers similar to any other answers, you may be included in a lawsuit for damages to the event and the Bingham Group. Your silence will be considered an admission you participated in a group action to intentionally cause harm to the event.

16

There are hundreds of photos posted on social media showing a big party, including alcohol at Tsali Notch Vineyard taking place throughout the time scheduled for the 2018 Monroe Life Balloon Fiesta benefitting CASA Monroe. Now is your opportunity to tell us **what** was said and **who** said it to convince you not to attend.

Please provide your honest response to this request by end of day, September 6, 2018.

Sincerely,

Lisa Bingham

96. Only two pilots responded, one indicating he drank beer and the other said he did not like the terrain but was annoyed by the "pissing match" as he said:

". I did NOT come to a "pissing match" between the entities that were putting on a festival. I still do not know what it was all about, I don't care what it was all about, I only came to fly."

97. Of course, this pilot could have participated in the balloon glow, as he was obligated pursuant to his registration agreement, but he chose not to participate.

98. The pilot's response says it all. The anger from the Defendants not being able to sell their alcohol bled into the event and polluted the pilots desire to perform. The other pilots, did not respond, which is also telling. It is possible that once this suit is filed, the Defendants will contact the pilots and solicit excuses that would be used to try to exculpate their actions.

99. The level of vicious hatred displayed against Lisa Bingham and the Bingham Group by the Defendants during this whole episode was stirred up by Defendant Duane

17

Baumert, who was deeply disturbed because the event was not going to be held at the winery, Tsali Notch.

100.   The Defendants Duane Baumert and agents of Tsali Notch became angry because the Plaintiffs successfully planned a fundraiser for CASA Monroe in a different location than Tsali Notch and the Defendants Tsali Notch and Duane Baumert together conspired together along with other Defendant Board members of CASA Monroe to destroy the Plaintiff's hot air balloon fundraiser and damage the Plaintiffs reputation in the community out of spite and revenge.

### III.   Causes of Action for Procurement of Breach of Contracts and Intentional Interference with Business Relations

101.   Plaintiffs incorporate, by reference, each and every allegation set forth in Paragraphs 1 through 100, as if fully restated herein.

102.   Plaintiffs executed contracts with the Pilots through the Pilot Registration Agreements and the securing of cabin lodging that bound the Pilots to participate in the Monroe Life Balloon Fiesta at the Sequoyah Birthplace Museum.

103.   Plaintiffs had multiple longstanding business relationships with vendors who participated in the Fiesta each year and attended the Monroe Life Balloon Fiesta to provide food for attendees.

104.   Defendants, Alisa Hobbs, Duane Baumert, Tyler Weiss, and Joe Anderson knew of the existence of the contracts between Plaintiffs and the pilots through their dealings with Plaintiffs and Pilots as CASA Board Members.

18

105. Defendant, Steve Davis, knew of the existence of the contracts between Plaintiffs and the pilots as he personally signed a registration agreement and secured cabin lodging that bound him to participate just as it did the other pilots.

106. Defendant CASA Monroe Inc., knew of the existence of the contracts between Plaintiffs and the pilots through its board members, Alisa Hobbs, Duane Baumert, Tyler Weiss, and Joe Anderson.

107. Defendant, Tsali Notch, knew of the existence of these contracts and relationships because upon information and belief, their general manager, Jeremy Dalton, communicated with CASA Monroe Board Members prior to the 2018 regarding these contracts and relationships.

108. Tsali Notch knew of these contracts and relationships through prior, consistent dealings with Plaintiffs as the Balloon Fiesta was on Defendant's property in prior years.

109. Tsali Notch knew of these contracts and relationships because of Defendant Steve Davis's statements to the crowd on their property in front of their agents that weekend.

110. Defendants, collectively, intended to procure a breach of Plaintiffs' contracts with the pilots when they defamed Plaintiff, Lisa Bingham, and further persuaded the pilots to go to Tsali Notch Winery to fly their balloons while being served free food and free alcoholic drink which dissuaded them from providing their services at the Sequoyah Birthplace Museum and perform their contract with Plaintiffs.

19

111. The breach of contract between Plaintiffs and the pilots caused Plaintiff significant damages as the breach destroyed the personal and professional reputations of Lisa Bingham, the Bingham Group, and the Monroe Life Balloons Fiesta. Further, the breached caused lost revenue, which can be compared to the years past.

112. One food vendor lost nearly $12,000 as a result of Defendants' interference with Plaintiffs' business relationship.

113. Defendant, Tsali Notch, intended to procure the breach of Plaintiffs contract by inducing the pilots with a place to fly while using the vineyard facilities to serve free food and free alcohol in hopes that they could host the event in the years to come.

114. The Defendants individually and collectively, acted maliciously when they procured the breach of Plaintiff's contracts because they were upset, angry, and in strong disagreement with Plaintiffs' decision to change the venue of the Monroe Life Balloon Festival from Defendant, Tsali Notch's property to Sequoyah Birthplace Museum.

115. Plaintiffs' contracts with the Pilots were breached as twenty-two (22) pilots agreed to participate in the Monroe Life Balloon Festival at Sequoyah Birthplace Museum, but only two (2) pilots actually participated in the festival that weekend.

116. Plaintiffs' contracts with the pilots were breached because of the malicious and willful actions of the Defendants. Further, the Defendants' actions were the proximate cause of the breached contracts as alleged throughout this complaint.

117. Defendant Duane Baumert willfully and intentionally procured a breach of Plaintiffs' contract with Blossman Gas and Propane when he called the Blossman

20

truck driver and redirected him to deliver propane to Tsali Notch instead of Sequoyah Birthplace Museum. Plaintiffs were then left on the hook for the propane bill for propane they were unable to use.

118. Upon information and belief, Defendants were aware that this propane was contracted to go to Sequoyah Birthplace Museum for the Fiesta, and are therefore complicit in the procurement of breach of Plaintiffs' contract with Blossman Propane and Gas.

119. The Defendants deliberately derailed and destroyed the planned hot air balloon event at the Sequoyah Birthplace Museum and just as thoroughly destroyed the reputation of Lisa Bingham and the Bingham Group in the eyes of thousands of event-goers as well as the pilots.

120. The Plaintiffs have received multiple hate emails from event goers requesting refunds and from pilots who didn't even come to the event but heard slanderous statements from other balloon pilots.

## IV.    Cause of Action for Defamation

121. Plaintiffs incorporate, by reference, each and every allegation set forth in Paragraphs 1 through 120, as if fully restated herein.

122. The Defendants CASA Monroe and its board members made, published, and otherwise communicated the false statements set forth in this complaint, without privilege, to the pilots, their families Plaintiffs' employees, Pastor Lon Shoopman, and event attendees.

21

123. These statements made throughout the weekend regarding Plaintiff Lisa Bingham concerned her integrity and honesty and were injurious to her trade and profession as she was falsely accused of stealing or misappropriating event funds. As such, the publication of the false statement constitutes slander, per se.

124. These statements were false and injurious to the reputation of Plaintiff, Monroe Life Balloon Fiesta when Defendants slandered Monroe Life Balloon Fiesta as a false and illegal non-profit organization.

125. Defendants knew that these statements regarding Monroe Life Balloon Fiesta were false when they made them because Plaintiffs showed Defendants proof that the entity could legally operate as a non-profit organization, yet Defendants went ahead and published these slanderous statements anyway.

126. In addition, Lisa Bingham has been accused of stealing from the event by insinuation through documents presented to her by the Defendants outlined in paragraphs above and in emails.

127. These statements were false because Lisa Bingham did not steal or misappropriate Monroe Life Balloon Festival funds at any time. In fact, she took steps to make sure the Defendants were unable to misappropriate the funds as she set up a bank account in order to obtain a full accounting of the event funds which had been a major issue in past events.

128. As a direct and legal result of Defendants' published false statements, Plaintiff, Lisa Bingham, has suffered damage to her personal reputation and her reputation as a business professional.

22

129.    Further, Plaintiff Bingham Group has suffered damages as a result of these false assertions as they have lost a key advertiser for their Monroe Life Magazine.

130.    Plaintiff Monroe Life Balloon Fiesta has suffered great reputational damage as those who attended the event sent multiple emails to Plaintiffs stating that they will not be attending the event in the future.

131.    The Defendants' knew their assertions were false but published them anyway. They did so willfully in order to interfere, sabotage, and prevent Plaintiffs from having a successful festival and to convince pilots to not fly at Sequoyah Birthplace Museum where they were obligated to fly. Further, Defendants hoped to severely damage Plaintiffs' reputations as to prevent any ability to have a successful Monroe Life Balloon Fiesta in the future.

132.    In the alternative, Defendants' publication of their false assertions were at the very least negligent as they were fully aware of the strong possibility of their falsity but published them anyway without any attempt or desire to ascertain the truth.

133.    To further defame the Plaintiffs and harm their reputation, and to make sure that the failure of the event was placed squarely on the Plaintiffs; immediately after the weekend event, the Defendant board members of CASA Monroe posted a full screen first page notice on their website saying in bold letters **"MONROE LIFE MAGAZINE'S BALLOON FIESTA EVENT SPONSORED BY MONROE LIFE MAGAZINE-THE BINGHAM GROUP-all questions and concerns, including refunds, about the event should be forwarded to the organizer, Monroe Life Magazine, Please contact: The Bingham Group, Call 865-523-5999, Email:**

23

**info@binghamgroup.com."** Signed Alisa M. Hobbs, Executive Director, CASA Monroe.

134.     The Defendant board members of CASA Monroe clearly caused anyone who read the website to believe that Monroe Life Magazine and the Bingham Group were to blame for the failed event, when in fact, the Defendants were the cause of the failed event through their willful, intentional, and malicious acts to prevent a successful Monroe Life Magazine Balloon Fiesta.

135.     This posting is libelous and stirred up more hatred within the general public against Lisa Bingham, the Bingham Group, and Monroe Life Balloon Fiesta Inc. and damaged the reputation of the Bingham Group and its premiere monthly magazine, Monroe Life.

136.     The offending CASA Monroe defendants accomplished both damaging the reputation of Lisa Bingham and the Bingham Group yet getting the proceeds of the event that remained.

137.     Plaintiffs' reputations have been severely damaged as the 2019 Monroe Life Balloon Fiesta has only been able to contract with six (6) balloonists which is a drastically reduced amount from years prior.

138.     Plaintiffs have had much trouble securing pilots for this years event because many of the pilots Plaintiffs have contacted are being called by last year's pilots and told that Lisa Bingham is still in charge and she is a liar and a thief.

24

## V.     Cause of Action for Civil Conspiracy

139.   Plaintiffs incorporate, by reference, each and every allegation set forth in Paragraphs 1 through 138, as if fully restated herein.

140.   Defendants shared a common design to sabotage, interfere, and prevent Plaintiffs' from having a successful Monroe Life Balloon Fiesta when they induced the pilots to go to Tsali Notch where there was free food and free alcoholic drinks, free propane and a place to fly their balloons for the weekend.

141.   This common design of inducing the pilots away from the Monroe Life Balloon Fiesta was clearly accomplished through unlawful means.

142.   Defendants intentionally and actually accomplished this common design by unlawful means when they defamed Plaintiffs, interfered with their business relations, and procured the breach of the Plaintiffs' contracts with the pilots and others as alleged throughout this complaint.

143.   Upon information and belief, Defendants each had the intent and the knowledge of the other defendants' intent to defame, interfere with business relations, and procure the breach of contracts, when they talked with, met with, or communicated with one another to induce pilots to stay away from Sequoyah Birthplace Museum during the Monroe Life Balloon Festival.

144.   Each of the Defendants took steps in furtherance of this conspiracy as alleged throughout this complaint.

25

145. All the Defendants intentionally, willfully and maliciously conspired together to cause a breach or termination of that relationship by luring and enticing the pilots to stay away from the balloon fiesta site.

146. Tsali Notch agents shared a common plan or design with the other Defendants and therefore effectively adopted as their own the tort of the other Defendant/Coconspirators within the ambit of the conspiracy. Therefore, Tsali Notch is co-equal with the other Defendants and all are co-conspirators in the tort of intentionally interfering with the Plaintiff's business relationship with the pilots.

147. Tsali Notch Vineyard and the other Defendants deliberately and intentionally conspired to create a failed festival, which they knew would ultimately damage the Plaintiffs' reputations.

148. The conspiracy among Jeremy Dalton as manager of Tsali Notch and the other Defendants to keep the balloons away from the Sequoyah Birthplace Museum venue caused anger and dismay among the event goers and slandered and defamed each of the Plaintiffs.

149. The conspiracy among the Defendants caused actual harm to the Plaintiffs in that it destroyed their reputation personally and professionally. Plaintiff Monroe Life Magazine lost a key advertiser as a result of the Defendants' actions. The Monroe Life Balloon Fiesta lost significant revenue in comparison to the years before as a direct result of the Defendants' conspiracy.

150. Such willful and deliberate actions of all the Defendants to keep the pilots away from the event, because the Plaintiffs wanted to keep the event from becoming a wine

26

and beer party, when the Plaintiffs had every right and, one could argue, obligation to do so, constitute such gross behavior as to warrant punitive damages.

Wherefore:

A.   Lisa Bingham and the Bingham Group make demand against Tsali Notch and the rest of the Defendants for punitive damages for their outrageous conduct that defamed the Plaintiffs, procured breaches of Plaintiffs' contracts with a third party, interfered with Plaintiffs' business relationships, all while conspiring to do so. These acts shock the conscience, and also caused Plaintiffs to suffer loss of reputation, humiliation, embarrassment and loss of business. For such conduct the Plaintiffs demand punitive damages against all the Defendants, jointly and severally, in the amount of $900,000.00.

B.   The Plaintiffs make further demand for all compensatory damages as allowed by law, including treble damages, against all Defendants, jointly and severally, for intentional procurement of a breach of contract, for intentional interference with the Plaintiffs' business relationships, and conspiracy to do so. Recovery of this cause of action will be based on the lost revenue as compared to the years past, and any proved losses based on the Defendants causing the festival to fail will ultimately be donated to CASA, as always anticipated, less the legal costs of obtaining this damage amount;

C.   Besides punitive damages, the Plaintiffs make demand for compensatory damages, against all Defendants jointly and severally, for the acts of slander and

27

defamation suffered by the Plaintiffs, caused and created by all the Defendants, both individually and conspiratorially, all in an amount to be determined at trial.

D.   Plaintiffs make demand for the removal of immunity of CASA Board Members in accordance with T.C.A. Section 48-58-601(c) because their unlawful acts were willful, wanton, or grossly negligent and were for the purpose of damaging the reputation of the Plaintiffs, to prevent them from having any ability to have any success regarding the Monroe Life Balloon Fiesta in the future.

E.   The Plaintiffs request a JURY TRIAL and make such further demands as law and equity require.

Respectfully,

A. Philip Lomonaco, BPR# 011579
Attorney for Plaintiff
800 S. Gay Street, Suite 1950
Knoxville, TN 37929
(865) 521-7422 phone
(865) 521-7433 fax

### COST BOND

We do hereby acknowledge ourselves as sureties for the costs of the Complaint in this cause in accordance with Tennessee Code Annotated § 20-12-120.

RESPECTFULLY submitted this ___4___ day of September 2019.

28

A. Philip Lomonaco, BPR# 011579
Attorney for Plaintiff
800 S. Gay Street, Suite 1950
Knoxville, TN 37929
(865) 521-7422 phone
(865) 521-7433 fax

29